IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| CAROLYN HACKLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18-cv-1410 (LMB/IDD) |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

Pursuant to 42 U.S.C. § 405(g), Carolyn Hackley ("Hackley" or "plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "defendant") denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–434. The parties have submitted cross motions for summary judgment and waived oral argument. For the reasons that follow, plaintiff's motion will be denied, and defendant's motion will be granted.

I. BACKGROUND

On January 28, 2014, Hackley filed her application for DIB with the Social Security Administration ("SSA"), alleging that her disability began December 3, 2011. Administrative Record ("R.") at 147.[1] Hackley was 61 years old on the date of the alleged onset of disability, had a high school diploma, and had previously worked as an accounts receivables clerk since 2000, but was laid off in 2011 when her employer's business closed. Id. at 49, 187–88 & 427. Before that position as an accounts receivables clerk, Hackley had been a receptionist at a hospital for over 20 years. Id. at 188.

---

[1] Plaintiff amended the alleged onset date to November 30, 2013. R. at 38.

The parties do not dispute that Hackley suffers from multiple physical impairments, including degenerative disc disease of the lumbar spine, osteoarthritis of the right shoulder and the left knee, and obesity. Id. at 15. On December 21, 2011, Hackley underwent knee surgery, specifically a left arthroscopic partial media and lateral meniscectomy with chondroplasty. Id. at 291. On June 27, 2012, she sustained an injury to her left knee when she twisted it getting out of a car and on July 10, 2012, she complained of the knee having significant swelling. Id. at 284. Hackley also suffers from significant back pain, right shoulder impingement syndrome, biceps tendonitis, as well as irritable bowel syndrome. Id. at 302, 385 & 470.

In addition to these physical ailments, Hackley suffers from depression and anxiety. Id. at 16, 389 & 426. Although she did not allege any mental impairments in her application for disability benefits, id. at 186, she began suffering from anxiety in 2007 when her son became ill and subsequently passed away, id. at 426. Plaintiff's medical records do not reflect that she has ever undergone any formal mental health treatment; however, she has taken medication in the evening to help her sleep and to treat feelings of irritability and over-excitement. Id.[2]

Plaintiff's disability claim was initially denied on March 19, 2015, id. at 82–85, and again upon reconsideration on August 21, 2015, id. at 90–92. Plaintiff, who was represented by a non-attorney disability advocate, appeared before an Administrative Law Judge ("ALJ") on May 3, 2017. Id. at 30–52. Plaintiff and a vocational expert testified during the hearing. Id. at 13. On December 7, 2017, the ALJ issued a decision finding that plaintiff was not disabled. Id. at 13–24. The ALJ concluded that plaintiff was last insured as of December 31, 2015 and that she had not engaged in

---

[2] Specifically, plaintiff was prescribed 1 milligram of Clonazepam in 2007 and again in 2016 as a sleep aid. R. at 259.

substantial gainful activity from the alleged onset date[3] to the date last insured. Id. at 15. Although the ALJ recognized that Hackley had the following severe impairments—degenerative disc disease of the lumbar spine, osteoarthritis of the right shoulder and the left knee, and obesity—the ALJ found that Hackley had the residual functional capacity ("RFC") to perform sedentary work, which included her past relevant work as an accounts receivables clerk. Id. at 15–23. Because Hackley had the RFC to perform her past relevant work, the ALJ found her not disabled.

Regarding Hackley's mental impairments, the ALJ concluded that plaintiff's anxiety and depression "did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were therefore nonsevere." Id. at 16. This conclusion was based on the March 15, 2015 mental health evaluation by the SSA's psychological consultant Dr. Elizabeth Halper ("Halper") who diagnosed plaintiff with generalized anxiety disorder, in partial remission, well-controlled with medication, and bereavement, in remission. Id. at 428. Dr. Halper concluded that plaintiff had no degree of disability "based on mental health alone," observing that plaintiff herself "denies her anxiety impacting her ability to work," instead explaining that "most of her occupational challenges stem from medical concerns." Id. Most importantly for this review, Dr. Halper stated in her report that:

> [Plaintiff] appears capable of performing simple and repetitive tasks without difficulty. More complex tasks with multiple step instructions <u>may be difficult</u> for her though with enough time and support in the form of written steps or an individual to whom she can pose questions she should be able to perform more complex tasks as well.

Id. at 428–29 (emphasis added). The ALJ afforded Dr. Halper's opinion "significant weight." Id. at 17.

---

[3] Although plaintiff orally amended the alleged onset date to November 30, 2013 during the hearing, R. at 38, the ALJ found that she did not engage in substantial gainful activity from "her alleged onset date of December 3, 2011," id. at 15.

3

Hackley appealed the ALJ's denial to the SSA's Appeals Council ("Appeals Council"), which denied her request for review on September 17, 2018. Id. at 1–3. The Appeals Council's action resulted in the ALJ's decision being the final decision of the Commissioner. Hackley timely filed for review of that decision in this court on November 14, 2018. Compl. [Dkt. No. 1]. The parties have now submitted cross-motions for summary judgment.

## II. DISCUSSION

### A. **Standard of Review**

When a social security claimant appeals the Commissioner's final decision to deny disability benefits, judicial review by the district court is limited to determining whether, based on the entire administrative record, the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. 42 U.S.C. § 405(g); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla but may be somewhat less than a preponderance." English v. Shalala, 10 F.3d 1080, 1084 (4th Cir. 1993) (citation omitted). In determining whether an agency's conclusion is supported by substantial evidence, the Court "must take into account whatever in the record detracts from" the agency's conclusion. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951). In reviewing the record for substantial evidence, the court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (first alteration in original) (quotation omitted). The Commissioner's factual findings, if supported by substantial evidence, are conclusive and must be affirmed. Richardson v. Perales, 402 U.S. 389, 390 (1971).

## B. Procedure for Determining Disability

The Social Security Regulations define "disability" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). To meet this definition, the claimant must have a severe impairment or impairments that makes it impossible to do past relevant work or any other substantial gainful activity that exists in the national economy. Id.; see Heckler v. Campbell, 461 U.S. 458, 460 (1983). In considering whether a claimant is disabled, the SSA must determine whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in Appendix I of 20 C.F.R. Part 404, subpart P; (4) the claimant can perform her past relevant work;[4] and (5) the claimant can perform other specified types of work. Johnson v. Barnhart, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (per curiam); 20 C.F.R. § 404.1520. The claimant has the burden of establishing the first four steps. See Hines v. Barnhart, 453 F.3d 559, 562–63 (4th Cir. 2006).

## C. Analysis

Plaintiff's counsel limits his argument to the ALJ's alleged failure to evaluate properly plaintiff's mental health record. Specifically, counsel argues that the ALJ did not properly evaluate Dr. Halper's opinions and improperly determined that plaintiff's mental health impairments were not severe. In response, defendant argues that the ALJ appropriately considered plaintiff's mental health record and that the RFC determination is supported by substantial evidence.

---

[4] Past relevant work is defined as substantial gainful activity in the past 15 years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 404.1560(b) & 404.1565(a).

5

1. Whether the ALJ Properly Evaluated Dr. Halper's Opinion

Plaintiff primarily focuses on the ALJ's failure to consider a single sentence in Dr. Halper's opinion: that "[m]ore complex tasks with multiple step instructions may be difficult" for plaintiff to complete. R. at 428. Although plaintiff admits that the ALJ's analysis of Dr. Halper's opinion appears to be a "proper evaluation," at least "[o]n its face," Pl.'s Br. in Supp. of Mot. for SJ [Dkt. No. 16] ("Mot.") at 6, she argues that the ALJ "did not mention or even acknowledge Dr. Halper's opinions indicating that [plaintiff] was limited from a mental health standpoint," id. at 5. To the contrary, the record shows that the ALJ did properly evaluate and consider Dr. Halper's conclusions about plaintiff's mental health. For example, the ALJ acknowledged that plaintiff was in the "low average-to-average range" of intelligence and could not "subtract serial sevens starting from 100 more than one time." R. at 16–17. Plaintiff's claim that Dr. Halper found plaintiff "limited from a mental health standpoint" is misleading because a fair reading of Dr. Halper's report shows she concluded that plaintiff's mental health "does not impact her ability to maintain a regular work attendance or perform work duties consistently." Mot. at 5; R. at 429.

Moreoever, plaintiff does not blame her mental health impairments for her disability. She told Dr. Halper that "mental health is not a concern," but rather that "her medical and physical ailments are preventing her from obtaining work." R. at 429. At the hearing, plaintiff corroborated what she told Dr. Halper by testifying that the reason she could no longer perform the duties of her former job as an accounts receivables clerk was because of the lifting it required. Id. at 39–43. She did not claim that any mental health issue prevented her from performing her prior work. Lastly, Plaintiff has never sought formal mental health treatment, and her initial application for DIB did not list any mental health impairments. Id. at 186.

6

Plaintiff analogizes her situation to that in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), but the two are dissimilar. In Mascio, the ALJ failed to address whether the claimant could perform certain functions for a full workday and the record contained "conflicting evidence as to [claimant's] residual functional capacity—evidence that the ALJ did not address." Id. at 637. Here, the record does not contain conflicting evidence. Dr. Halper's single sentence about plaintiff potentially needing additional time and support to perform complex tasks well does not require an evaluation by the ALJ as to whether plaintiff has a specific functional limitation. Neither Dr. Halper nor plaintiff indicated that plaintiff's mental impairments as a whole or her potential difficulty with complex tasks affected her ability to perform her past work. Therefore, the ALJ's determination that plaintiff was capable of performing her past work was supported by substantial evidence.

### 2. Whether Plaintiff's Mental Impairments Were Not Severe

Plaintiff also argues that the ALJ improperly determined that her mental health impairments were not severe. To assess whether a claimant's mental health impairments are severe, the ALJ should assess four broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(B). A "severe" impairment "significantly limits [the claimant's] physical or mental ability to do basic work activities." Id. § 404.1520(c). Basic work activities include physical functions; speaking, hearing, and seeing; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. Id. § 404.1522(b). "An impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected

to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (citation omitted).

The ALJ determined that plaintiff's mental impairments of anxiety and depression did not cause more than minimal limitations in her ability to perform work, largely based on Dr. Halper's opinion. R. at 16. Plaintiff argues that Dr. Halper "did provide opinions that restricted [plaintiff's] ability to perform basic mental work-related activities," Mot. at 9, but Dr. Halper explicitly described those activities which might require plaintiff to obtain assistance as "complex," the opposite of basic. R. at 428.

The ALJ explicitly considered each of the "four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders" and concluded that plaintiff had no limitation in any of the four areas. R. at 16–17. This conclusion is supported by substantial evidence. First, regarding understanding, remembering, or applying information, the ALJ found that plaintiff was capable of managing her daily affairs. Id. at 16. Although plaintiff described having some memory problems, she largely attributed that issue to her advanced age. Id. at 46. Dr. Halper described plaintiff's remote memory as "intact" and her immediate memory as "relatively intact." Id. at 427. Second, regarding interacting with others, plaintiff had no limitation. Id. at 16–17. Plaintiff was able to maintain her most recent job for over ten years and her prior job for over twenty years, illustrating an ability to get along well with coworkers. Id. at 17. Third, regarding concentration, although Dr. Halper did opine that plaintiff's intelligence was low to average, plaintiff was able to demonstrate logical and coherent thought processes and judgment. Id. Fourth, regarding managing oneself, plaintiff was able to manage the activities of daily living, including driving and managing her finances, without help from others. Id. The ALJ found that plaintiff "has never been hospitalized for any mental health reason and has never received any outpatient psychiatric therapy or counseling,"

id., and concluded that plaintiff's mental impairments caused no more than a mild limitation and were therefore nonsevere.

Plaintiff's sole argument—that the ALJ did not incorporate Dr. Halper's statement that plaintiff may have difficulty with complex tasks without additional time and written steps or the opportunity to ask questions—is insufficient to overturn the ALJ's finding of nonseverity. Dr. Halper's report, taken in its entirety, fully supports the ALJ's finding, and plaintiff has presented no evidence to the contrary.[5]

III. CONCLUSION

Because the ALJ's decision regarding plaintiff's mental health and ability to perform sedentary work is supported by substantial evidence, plaintiff's motion for summary judgment will be denied and defendant's motion will be granted by an appropriate Order to issue with this Memorandum Opinion.

Entered this 24 day of June, 2019.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge

---

[5] The only shred of evidence in the record supporting plaintiff is the vocational expert's statement at the end of the hearing when asked by plaintiff's representative whether "a hypothetical individual of the claimant's age, education, [and] work experience" who was "limited to simple, routine unskilled work without any production quotas or production pace" would be able to do the past relevant work of the claimant. R. at 51. The vocational expert answered that this hypothetical claimant could not perform that work with those limitations. Id. Plaintiff did not mention this testimony by the vocational expert in either her motion for summary judgment or her reply brief. Even if she had, the hypothetical does not reflect any of the evidence in the record. Dr. Halper made no mention of production quotas or production pace; those were pure invention of plaintiff's representative. Furthermore, plaintiff had been able to perform her past work, despite any mental health problems. The only task plaintiff was unable to complete while working as an accounts receivables clerk was lifting. A condition that did not impair a claimant's ability to work in the past cannot be disabling without evidence of deterioration, see Tyree v. Bowen, No. 87-1649, 1988 WL 16918, at *1 (4th Cir. Feb. 26, 1988) (per curiam) (citing Cauthen v. Finch, 426 F.2d 891, 892 (4th Cir. 1970)), and no evidence of deterioration was provided.